MATTER OF PENNER

In Visa Petition Proceedings

HEL-N-3070

*Decided by Commissioner March 1, 1982*

(1) Occupations do not inherently qualify a beneficiary for classification under section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(L). The Service looks for elements beyond general job tasks and duties; in other words, the specialized knowledge related to the proprietary interests of the business, its management, and concerned skills or knowledge not readily available in the job market.

(2) A beneficiary who possessed knowledge of the parts operation that was shared by no other employee of the company and who was essential to the operation of the parts distribution qualified as an "L" manager even though he had not served in an executive or managerial capacity previously. *Matter of Vaillancourt*, 13 I&N Dec. 654 (R.C. 1970), interpreted.

(3) A beneficiary who was an executive secretary in a multinational company and whose activities as a liaison with high government officials and business executives, as an intermediary with customers and government officials and as an advisor to a new vice president of the company was found to be a person of specialized knowledge. *Matter of Raulin*, 13 I&N Dec. 618 (R.C. 1970), interpreted.

(4) A beneficiary who was a sales manager was found to be a person of specialized knowledge in screening, recruiting, contracting for, and training sales personnel in the sale of cosmetics. *Matter of LeBlanc*, 13 I&N Dec. 816 (R.C. 1971), interpreted.

(5) The "L" provision of section 101(a)(15) of the Immigration and Nationality Act, 18 U.S.C. 1101(a)(15), was not intended to alleviate or remedy a shortage of United States workers. The temporary worker provisions contained in section 101(a)(15)(H) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(H), provide a basis for admission of workers for whom there is a shortage.

ON BEHALF OF PETITIONER: Charles C. Foster, Esquire
1130 Pennzoil Place - South Tower
Houston, Texas 77002

This proceeding is before me under certification as provided by 8 C.F.R. 103.4. The Regional Commissioner dismissed an appeal from the District Director's decision in which he held that the beneficiaries did not qualify as "L" intra-company transferees. The visa petitions were specifically denied on the grounds that the beneficiaries were not being transferred to the United States as employees of the petitioner's branch office, or of an affiliate or subsidiary, and on the ground that the

beneficiaries were not persons of "specialized knowledge" under section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. 1101(a) (15)(L).

The petitioner is a Canadian corporation engaged in the business of providing oil and gas drilling contracting services for the exploration and production of those natural resources. It has approximately 500 employees and gross annual revenue of $66 million (one supporting document states in excess of $6 million). The petitioner does not now have a place of business in Montana, although it apparently has a business office in Colorado and claims to have qualified to do business there. The five beneficiaries are Canadian citizens who have worked for the petitioner in Canada for more than the past year as a motorman, derrickman, driller, assistant driller, and electrician on the petitioner's drill rig crews in Canada. The petitioner claims it has entered into a contract (which it has not submitted for the record) to provide its drilling services in eastern Montana and seeks to transfer these beneficiaries to the United States as part of the rig crews for this job.

The major focus of this case is the finding that the beneficiaries are not persons of specialized knowledge. Section 101(a)(15)(L) provides that "L" status may be accorded to an alien who:

> has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge. . . .

The Regional Commissioner found that the beneficiaries did not possess skills, knowledge or responsibilities "uniquely important" to the petitioner. He also found that to grant the "L" status would violate the Congressional intent that the "L" category be narrowly drawn.

House of Representatives Report No. 91-851, 91st. Congress, Session 2 (1970), contains the legislative history of Public Law 91-225 which established the L-1 nonimmigrant classification. The Report is silent on the subject of specialized knowledge. There were, however, attempts by the Chairman of the Subcommittee No. 1 of the House Judiciary Committee during the course of the hearings on the bill to have various witnesses define the level of skill necessary to qualify under the proposed "L" category (see: Hearings before Subcommittee No. 1 of the Committee on the Judiciary House of Representatives, Serial No. 91-9, pages 205-274). In response to the Chairman's questions, various witnesses responded that it was their understanding the legislation would deal with "high level" positions, "experts," "unique skills," that it would not include "lower categories" of workers, and that "they were not talking about skilled craft workers or people of that sort" (Hearings, id. at pages 210, 218, 223, 240, 248).

The petitioner asserts that the remarks of Congressman McEwen at the hearing on the bill are representative of the intent of Congress:

Other statements by Congressman McEwen indicated that the bill would "alleviate that problem of restrictions now placed on the interchange of executive, managerial and skilled personnel of American and Canadian companies who seek to bring these employees to the facilities located in our country." He further stated, "prior to July 1968 a Canadian company with an American subsidiary could, within a reasonable time, transfer needed skilled production workers and management personnel from Canada to the U.S. . . ."

There are two major problems with both the petitioner's interpretation of and reliance on these remarks. First, Congressman McEwen was not a member of the Subcommittee, but only a witness. Secondly, his testimony touched on both the "L" legislation and a bill to amend the "H" temporary worker provisions. His comments as cited may or may not refer to "L" nonimmigrants. His individual views are ambiguous and not an expression of the drafting subcommittee. They are, therefore, not entitled to great weight in determining the Subcommittee's intent [see *United States* v. *Matthews*, 419 F.2d 1177, 1182 (D.C. Cir. 1969); *D.C. Federation of Civil Associations, Inc.* v. *Volpe*, 434 F.2d 436, 445 (D.C. Cir. 1970)].

The transcript of the hearings indicates that the *subcommittee members* themselves did not take exception to the definitions and prevailing thought supplied by the witnesses. To the extent that silence is acquiescence, the tenor of the testimony *as a whole* contradicts the interpretation presented by the petitioner in regard to Congressional intent.

The summary of the H.R. No. 91-851 which accompanied the bill echoes the limited definition favored by most subcommittee witnesses:

Evidence submitted to the committee established that the number of temporary admissions under the proposed "L" category will not be large. The class of persons eligible for such nonimmigrant visas is narrowly drawn and will be carefully regulated and monitored by the Immigration and Naturalization Service. (H.R. No. 91-851, 1970 *U.S. Code Cong. and Admin. News* at 2754).

The report also states that the purpose of the L-1 provision is to facilitate the admission of "key personnel" and "managerial personnel." A broad definition which would include skilled workers and technicians was not discussed, thus the limited legislative history available therefore indicates that an expansive reading of the "specialized knowledge" provision is not warranted.

The petitioner contends that the Regional Commissioner's decision narrowly defining "specialized knowledge" is contrary to prior Service and Board of Immigration Appeals rulings. This is not correct. Precedent decisions issued around 1970 form the bulk of the decisions issued on "L" visas. Although the decisions appear fairly broad in their implications, none of them stand specifically for the proposition that

51

skilled workers are persons of specialized knowledge. In *Matter of Vaillancourt*, 13 I&N Dec. 654 (R.C. 1970), a petition was submitted on behalf of a man who would serve as a parts manager for the entire United States, for a company with sales in excess of one billion dollars. The issue presented in that case was whether the beneficiary could qualify as an "L" manager if he had not served in an executive or managerial capacity previously. The Regional Commissioner concluded that the beneficiary's prior work history qualified him as a person of specialized knowledge. The decision indicates quite clearly that the beneficiary possessed knowledge of the parts operation that was shared by no other employee of the company and that the beneficiary was essential to the operation of the parts distribution system.

In a second case cited by the petitioner, *Matter of Raulin*, 13 I&N Dec. 618 (R.C. 1970), the beneficiary was an executive secretary in a multinational company. The petition was approved, as she was found to be a person of specialized knowledge. The inquiry focused on her activities as a liaison with "high" government officials and business executives, as an intermediary with customers and government officials and as an advisor to a new vice president of the company. The decision made it clear that she was valued for her knowledge.

In *Matter of LeBlanc*, 13 I&N Dec. 816 (R.C. 1971), a petition was approved on behalf of a sales manager. Although the decision mainly discussed the question of whether or not a "branch office" existed in the United States, the beneficiary was found to be a person of specialized knowledge in screening, recruiting, contracting for, and training sales personnel in the sale of cosmetics.

In a more recent decision of June 19, 1981, the Commissioner of Immigration and Naturalization stated that the *LeBlanc* and *Raulin* decisions did not find that the occupations inherently qualified the beneficiaries for the classification sought. The Service looked for elements beyond general job tasks and duties. Both decisions rested on a finding that the beneficiaries had essential knowledge of the business firm's product or service, management operations, decision making process, or similar elements. In other words, the specialized knowledge related to the proprietary interests of the business, its management, and concerned skills or knowledge not readily available in the job market, *Matter of Colley, et al.*, 18 I&N Dec. 117 (Comm. 1981).

The precedents, therefore, stand for the proposition that petitions may be approved for persons with specialized knowledge, *not for skilled workers*. Although Raulin was a secretary, her petition was approved for reasons other than her basic secretarial skills. Vaillancourt received a visa because he would direct the nationwide parts operation, not because he was a "stock clerk" as the petitioner here contends. LeBlanc's petition was approved because he could recruit and train persons, not

because he could sell cosmetics. The contemporary work place is, of course, increasingly complex and most employees possess varying levels of technical and specialized skills which have been acquired by both on-the-job experience and by training courses. However, in view of the House Report, it cannot be concluded that all employees with any level of specialized knowledge or performing highly technical duties are eligible for classification as intra-company transferees. Such a conclusion would permit extremely large numbers of persons to qualify for the "L-1" visa. The House Report indicates that the employee must be a "key" person and "the numbers will not be large."

A distinction can be made between the person whose skills and knowledge enable him or her to produce a product through physical or skilled labor and the person who is to be employed primarily for his ability to carry out a key process or function which is important or essential to the business firm's operation. Thus, in *Matter of Colley, et al., supra,* the Commissioner authorized L-1 classification to five alien beneficiaries who possessed knowledge of the uniquely complex equipment and the particular techniques used by the petitioner in map surveys and which were proprietary to the petitioner.

A review of the record of this proceeding reflects only that the beneficiaries are highly skilled workers who will be performing labor on drilling rigs. These occupations are technical, but not unique in the industry at large. The United States Department of Labor estimated that there were more than 650,000 gas and petroleum wells in the United States in 1978 (*Occupational Outlook Handbook,* 1980, Bureau of Labor Statistics, pg. 498). Statistics contained in the record show that in June 1981, there were over 4,000 active rotary oil and gas drilling rigs operating in the United States. A typical rotary drilling crew consists of four or five workers. Because drilling rigs are operated 24 hours a day, 7 days a week, several crews are needed for each rig.

The petitioner states that these beneficiaries will work on "electrical/diesel" powered drilling rigs and that only 5% of the rigs now operating in the United States are so powered. However, I see nothing in the record which distinguishes these workers from many others involved in the industry. New technology and different equipment are routinely introduced into the American workplace. In the absence of evidence that there is significant proprietary knowledge involved or that the know-how or knowledge held by these beneficiaries is unique, I am unable to conclude that the petitioner has demonstrated that the beneficiaries have the specialized knowledge contemplated under the statute. The petitioner's contention that a shortage of U.S. rig workers exists is not material in this proceedings. The "L" provision was not intended to alleviate or remedy a shortage of United States workers. The temporary worker provisions contained in section 101(a)(15)(H) of the Act,

provide a basis for admission of workers for whom there is a shortage.

A second basis for denying the petitions was the Regional Commissioner's finding that the beneficiaries would be employed directly in the United States by a foreign company and that the beneficiaries would not be controlled in any way by the foreign company's United States office located in Denver, Colorado. I agree with the Regional Commissioner that if the beneficiaries will not in fact have any employment relationship to the Denver office, then it would appear that they are not in fact *intra*-company transferees. The second clause of "L" provision provides that the employee must be coming to render his services to the "same employer or a subsidiary or affiliate thereof." In this instance, the petitioner does not contend that the oil rig in Montana is a subsidiary or affiliate of the petitioner. Arguably, the beneficiaries are coming to work for the "same employer," the petitioner. This conclusion, however could lead to an anomalous result: virtually any foreign based business would be able to use the "L" visa category to bring to the United States any number of its employees whether or not a business entity existed or was being established in this country. For instance, a foreign-based construction company could contract to build a factory, and then send a work-force to build the facilities, thereby depriving American workers of employment. This result would not be consistent with the legislative history of the "L" provision. The term "same employer" as used in the second clause of the "L-1" provision should be understood to mean "parent company." This latter term is used in the House Report to the bill, in phrasing such as "parent companies, branches, or affiliates," "by a company affiliated with the parent, subsidiary, or branch located in the United States."

The petitioner has submitted additional information to the effect that an office is being constructed in Williston, North Dakota, which will manage and control the petitioner's United States operations. This development potentially could remove the Regional Commissioner's second reason for denying the petitions. Nonetheless, the petitioner has failed to establish that the beneficiaries are entitled to classification under section 101(a)(15)(L) of the Immigration and Nationality Act.

ORDER. The visa petitions are denied.